### Estate of MAKERITA SHIMASAKI

High Court of American Samoa
Trial Division

PR No. 6-93

March 26, 1997

---

Before RICHMOND, Associate Justice, TAUANUʻU, Chief Associate Judge, and LOGOAI, Associate Judge.

Counsel: For the Estate of Makerita Shimasaki and Administrator Katherine S. Fua, Albert Mailo
For Intervenor Letuugaifo Iereneo, Togiola T.A. Tulafono
For Intervenors Peneueta Tauiliili and Loi Poi, Afoa L. Suʻesuʻe Lutu

Opinion and Order:

The probate of the estate of decedent Makerita Shimasaki ("Makerita") was commenced on April 12, 1993. On May 8, 1993, the court appointed Christine Shimasaki Tuʻuu ("Christine") as the estate's first administrator. On February 23, 1995, the court designated petitioner Katherine Shimasaki Fua ("Katherine") as the administrator to replace Christine, who had permanently relocated outside the Territory.

Christine included a certain building ("the building"), located in Leone, American Samoa, in the final accounting of the estate. Intervenors Letuugaifo Iereneo ("Letuugaifo") and Peneueta Tauiliili ("Peneueta") claimed interests in the building. Intervenor Loi Pio ("Loi") renounced any interest in the building but supported Peneueta's claim. Katherine then petitioned for declaratory relief on the ownership of the building.

The court regularly heard the petition on July 1, 1996, with all counsel present, and makes the following findings of fact and conclusions of law.

## FACTS

Tui Pio ("Tui") and Saipoia Pio ("Saipoia") married in 1950. No children were born of this marriage. However, both had children from previous marriages, including Tui's son Loi and Saipoia's daughter Makerita and sons Letuugaifo and Mose. Tui never legally adopted any of Saipoia's children. Lafaele Shimasaki ("Lafaele") and Makerita married in 1965. Peneueta is Mose's daughter.

The building is located on the Save family's communal land known as "Fagasaua" in Leone, American Samoa. Saipoia and her descendants are Save family members. On December 9, 1960, Tui secured an agreement separating the building as the property of himself, and his "heirs, devisees, legatees, legal representatives and assigns," from the land. Peneueta Ex. No. 1. Tafiaina Save, the eldest son of the family saʻo ("the

196

Save"), actually signed the agreement. The Save was not physically well then. However, the Save directed preparation and, in his immediate presence, execution of the agreement. The separation agreement was recorded in 1961. Tui and his family lived and operated a store in the building. The family experienced changes, including personal differences, as the years passed. Tui spent considerable time outside American Samoa, for health and other purposes, and only stayed in the building occasionally. Saipoia, Makerita, and Lafaele were the principal occupants during this period, until Saipoia died in 1983. When Tui learned that Makerita and Lafaele rented the building to outsiders, he sued for a declaration of his title and an accounting and reimbursement of the rents. We take judicial notice of that action, in which the court held:

> We declare that Tui has something similar to a life estate in the house. He can possess it, but cannot dispose of it during his lifetime. He must preserve it, keep it insured against storm and fire and upon his death it will pass to Makerita. In the event the house is rented, he must share the rent with Makerita, giving her 1/3 of the receipts after payment of any expenses for protection and maintenance of the house. The court in equity retains jurisdiction over this matter. Either party can apply for further order to carry out the intent of the decision or in the event of change of circumstances to modify the decree.

*Tui Pio v. Lafaele Shimasaki & Makerita Shimasaki*, CA No. 98-83, at 3-4 (Trial Div. Jan. 30, 1984)(decree).

Apparently Tui then lived in the house, while Makerita and Lafaele primarily resided in Tafuna until they died. Makerita died in 1989. Lafaele died later. They left seven children, including Christine and Katherine. Tui survived Makerita and Lafaele. However, his health began to seriously deteriorate in 1985, and he traveled to and from Hawaii for medical care. In Hawaii, Peneueta attended to him. She permanently returned to American Samoa in 1992 and cared for Tui until his death in 1993. She and her family have lived in the house since her return and leased the store portion of the premises to others. Tui orally gave the building to Peneueta and confirmed this gift in a recorded deed, executed on March 22, 1993.

The building is constructed near the shoreline in Leone and suffered severe damage in the hurricanes of 1966, 1989, and 1991. Tui, with the help of others, rebuilt the structure after the first hurricane. Peneueta and the store lessees, along with Tui, Mose and Loi, were the main contributors to reconstruction after the second and third hurricanes.

Peneueta is still paying an outstanding loan for this work. She also added a large extension to the living area of the building in 1993.

## DISCUSSION

### 1. Principal Basis of the Parties' Claims

Makerita's estate, and Katherine as the administrator, claim the estate owns the building. This claim is based on Makerita's remainder interest recognized by the court in CA No. 98-83. Alternatively, they contend that the estate has an interest in the building according to Makerita's share with her siblings as Saipoia's heirs. Letuugaifo uses the same heirship theory in support of his claimed interest in the building. Peneueta asserts ownership of the building as Tui's assignee.

### 2. The 1960 Separation Agreement

Makerita's estate argues that the 1960 separation agreement fails without the Save's execution. Statutory law authorizes the separation of structures, as personal property, from communal land by agreement. A.S.C.A. § 37.1502.[1] The law also requires the sa`o execute any separation agreement for the benefit of anyone other than himself. A.S.C.A. § 37.1503(a).[2]

◼ This court has clearly enunciated that under the mandate of A.S.C.A. § 37.0102(d), only the sa`o may order a survey for title registration of communal land, and the sa`o may not delegate that authority. *Galea'i v. Ma'ae*, 2 A.S.R.2d 4 (App. Div. 1984). We would ordinarily apply the same principle to separation agreements subject to and given the wording of § 37.1503(a).

However, we think that the 1960 separation agreement making the building Tui's personal property was exected in substantial compliance with the statutory requirement of the Save's signature. Save expressly directed the preparation and immediately supervised the execution of the

---

[1] Virtually identical provisions were in previous codes. A.S.C. § 12.0201 (1961) and 27 A.S.C. § 402 (1973). The 1960 separation agreement was actually based on the provisions of subchapter 28.02 (Amendment No. 2 of 1958) of the then existing 1949 American Samoa Code. We have not located the 1949 Code with this amendment appended. However, the language of the 1960 separation agreement clearly indicates that the applicable code provisions in 1960 comported with the present and other codes succeeding the 1958 Amendment.

[2] *See also* A.S.C. § 12.0202 (1961) and 27 A.S.C. § 403(a) (1973).

198

agreement. We believe that he had a pervasive role in the creation of the agreement. Thus, we hold that the 1960 separation agreement was and is valid. We hasten to add, however, that we limit this decision to the peculiar circumstances of this case.

Makerita's estate, Letuugaifo, and Peneueta have rights to the building only from the legal ramifications of the 1960 separation agreement. We next turn to these consequences.

### 3. The Heirship Claims

Clearly, Tui became the sole owner of the building under the 1960 separation agreement. The agreement is plain and unequivocal in this respect. No one else, including Saipoia, was given any express interest in the building. Thus, Saipoia was excluded from an interest in the building other than her undivided one-third dower interest in personal property under A.S.C.A. §§ 40.0201 and 40.0103.

Local case authority recognized dower as a fee simple absolute interest, at least when the dower interest takes actual effect, under prior statutory law. *Tolivale v. Ufanua*, 3 A.S.R. 196, 199 (Trial Div. 1956); A.S.C. § 959 (1948). This result is contrary to our understanding of dower as traditionally a life estate under common law. *See* HOMER H. CLARK, LAW OF DOMESTIC RELATIONS 220 (West 1968); 25 AM. JUR. 2D *Dower and Curtesy* §§ 1, 6 & 7 (1966). Moreover, the former fee simple characterization of dower has not been carried over in A.S.C.A. § 40.0201. Since Saipoia predeceased Tui and her dower interest in the building never came into being, her heirs, specifically her children, including Letuugaifo and Makerita, could not acquire any interest in the building by means of Saipoia's dower interest.

### 4. The 1984 Judicial Decision

The court, in the 1984 decision, recognized the validity of the 1960 separation agreement but then, as a matter of equity, gave Tui a life estate and Makerita a remainder in the building. However, we do not think that Makerita gained a permanent property interest, if any at all, in the building by this decision.

The court in 1984 probably achieved an equitable result under the then existing circumstances. The court also anticipated modification of this result due to changed circumstances and, though a questionable proposition, purportedly retained jurisdiction for this purpose. Thus, the court envisioned a future set of different property interests in the building without specifying any triggering events. Conceptually, this expectation seems to create for Makerita a remainder either subject to complete

199

defeasance (an initially vested remainder) or subject to the uncertain condition precedent that she survives Tui (a contingent remainder). *See,* B.E. WITKIN, SUMMARY OF CALIFORNIA LAW, *Real Property* 535 (9th ed. 1987) (citing RESTATEMENT, PROPERTY § 157). Thus, Makerita's remainder was either subject to defeasance or delayed in existence, and was defeated by her death before Tui.

However, we believe that the court reached an untenable result in the 1984 decision. The decision totally contradicts the absolute property interest in the building conveyed to Tui by the 1960 separation agreement and for that reason is ineffective. Consequently, Makerita never acquired a remainder interest in the building, and her estate cannot own the structure by this means.

5. The 1993 Gift Deed

The provisions of the present law, A.S.C.A. §§ 37.1501-37.1506 and prior law, 27 A.S.C. §§ 401-406 (1973), A.S.C. §§ 12.0201-12.0204, and, we believe, sub-chapter 28.02 (Amendment No. 2 of 1958) of the 1949 American Samoa Code, along with the language of the 1960 separation agreement, do not prevent the owner of a separated structure from transferring his title to any other person. In fact, the agreement expressly contemplates potential transfer to the owner's "heirs, devisees, legatees, legal representatives and assigns." The 1993 gift deed by Tui to Peneueta meets all legal requirements to transfer Tui's title to the building. Thus, we hold that Peneueta now owns the building.

## CONCLUSIONS

1. The 1960 separation agreement was and is valid. The Save transferred an absolute fee simple interest in the building to Tui by this agreement.

2. Saipoia's only interest in the building was her potential dower interest if Tui predeceased her. Since Tui survived Saipoia, her dower interest never vested, and her children and other heirs cannot succeed to any interest in the building by inheritance from Saipoia.

3. The 1984 judicial decision was ineffective to give Makerita any remainder or other title interest in the building. Makerita's estate does not have any interest in the building.

4. Tui's gift of the building to Peneueta by deed in 1993 was valid. Peneueta is the present owner of the building in fee simple.

It is so ordered.